IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANIELLE VARNER, a Minor, by
and through her father and
next friend, Michael Varner,

    Plaintiff,

v.                                                Civil Action No. 3:21cv290

YAMAHA MOTOR CORPORATION, U.S.A. et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT YAMAHA MOTOR CORPORATION, U.S.A.'S MOTION FOR DETERMINATION REGARDING ADMIRALTY JURISDICTION (ECF No. 38) (the "Motion"). In reality, the Motion is a challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) that, as presented, assumes the pleaded facts to be true and argues that, on those facts, there is no admiralty or maritime jurisdiction. The resolution of the Motion also resolves DEFENDANT YAMAHA MOTOR CORPORATION, U.S.A.'S MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS (ECF No. 40).

Danielle Varner was injured when she fell off a Yamaha WaveRunner personal watercraft that she was riding on the Rappahannock River. This case was brought on two strict liability theories and a general maritime negligence theory. The parties acknowledge that Virginia law does not have a cause of action for

strict liability. The case's viability thus substantially depends on whether it falls within federal admiralty jurisdiction. Yamaha Motor Corporation, U.S.A. ("Yamaha") argues that it does not.

While the parties disagree about many factual matters, the undisputed facts satisfy the Supreme Court's two-part test for admiralty jurisdiction articulated in <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527 (1995). Accordingly, this Court retains admiralty jurisdiction over this case under 28 U.S.C. § 1333(1) and Yamaha's Motion will be denied.

## BACKGROUND

The relevant jurisdictional facts are more straightforward than the parties' briefing on this Motion would indicate. Danielle Varner was riding a Yamaha WaveRunner on the Rappahannock River with two other people. The Rappahannock River is a navigable water of the United States. At some point, Varner, who was seated at the rear of the WaveRunner, fell off.[1] She landed in the path of the powerful current of water created by the WaveRunner's propulsion and suffered serious internal injuries from the force of the water entering her anus and vagina.

---

[1] The parties' briefing on this Motion engages in lengthy dispute as to the cause of Varner's fall. But that question is not relevant to the disposition of Yamaha's Motion. While it may be relevant to the issue of liability, the Court does not need to decide it for the purpose of establishing admiralty jurisdiction.

2

This case presents two strict liability claims. In Count One, the Complaint alleges that Yamaha failed to implement any of a number of design changes to the WaveRunner that could have prevented passengers from falling off the way that Varner did. In Count Two, the Complaint alleges that Yamaha knew of the risk of injuries of the kind that Varner suffered and failed adequately to warn users of the need to wear appropriate protective clothing when using the WaveRunner. In Count Three, the Complaint alleges a claim called "General Maritime Negligence." The dispositive issue is whether there is admiralty jurisdiction.

## DISCUSSION

### I. Legal Framework

The modern test for whether a federal court has admiralty jurisdiction under 28 U.S.C. § 1333(1) has developed through a series of cases decided by the Supreme Court of the United States.

First, there was the traditional locality test. That test dictated that "the jurisdiction of the admiralty is exclusively dependent upon the locality of the act. The admiralty has not . . . any jurisdiction over torts except such as are maritime torts, that is, such as are committed on the high seas or on waters within the ebb and flow of the tide." Thomas v. Lane, 23 F. Cas. 957, 960 (C.C. Me. 1813) (No. 13,902) (Story, J.).

3

Then, in Exec. Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972), the Supreme Court modified the traditional locality test in holding that admiralty jurisdiction did not apply to a case involving an airplane crashing into Lake Erie after running into a flock of birds during takeoff. The Court held that it was not enough that the accident had occurred "on or over navigable water," id. at 268, and that admiralty jurisdiction requires "that the wrong bear a significant relationship to traditional maritime activity." Id.

In Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1981), the Supreme Court held that admiralty jurisdiction governed the collision of two pleasure boats on a river, even though neither boat had ever been used for commercial purposes, explaining that the federal interest in protecting maritime commerce "can be fully vindicated only if all operators of vessels on navigable waters are subject to uniform rules of conduct." Id. at 675. In E. River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858 (1985), the Supreme Court held that product liability causes of action, including strict liability, could be brought in cases falling under admiralty jurisdiction.

In Sisson v. Ruby, 497 U.S. 358 (1990), admiralty jurisdiction was extended to a case involving a fire in the washer/dryer area of a defendant's pleasure yacht docked at a marina. The Supreme Court held that an event of that general character posed a threat

4

to maritime commerce, and thus that the case came within admiralty jurisdiction. The Sisson Court explained that the analysis "determine[s] the potential impact of a given type of incident by examining its general character," id. at 363, and that the issue is not "the actual effects on maritime commerce . . . [nor] the particular facts of the incident," but rather "whether such an incident is likely to disrupt commercial activity." Id. This, according to Sisson, was what justified the extension of admiralty jurisdiction to the collision of pleasure boats in Foremost, even though the specific location of the accident was not generally used for commercial traffic. Id. That point was underscored later in the opinion with the observation that, "[w]ere courts required to focus more particularly on the causes of the harm, they would have to decide to some extent the merits of the causation issue to answer the legally and analytically antecedent jurisdictional question." Id. at 365.

Finally, in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1994), the Supreme Court consolidated several of its earlier admiralty cases into a two-part test. The test first requires that a court establish location, which entails determining "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." 513 U.S. at 534. Next, a court is required to establish connection, which entails determining two subordinate issues:

5

(a) assessing "the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce;" id. (internal citations and quotations omitted); and (b) looking to the "general character" of the event to assess whether it "shows a substantial relationship to traditional maritime activity." Id. (internal citations and quotations omitted).

The Grubart test thus integrates the holding from Executive Jet that events' location in navigable waterways is a necessary but not sufficient condition to admiralty jurisdiction. Grubart makes clear, however, that the connection requirement is permissive and does not depend on a party's having been engaged in commercial maritime activity. See 513 U.S. at 543 ("Although we agree with petitioners that these cases do not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so.").

## II. Application

Yamaha's primary contention is that the events in question do not satisfy either of the elements of the connection facet of the Grubart test. But Yamaha's arguments confuse these issues in several ways.

The location facet of the Grubart test is obviously satisfied because the events occurred on the Rappahannock River, a navigable waterway regularly used for commercial transportation. Yamaha argues, however, that the specific location of the accident undermines the second facet of the Grubart test because it was out of the way of any commercial shipping. But in so arguing, Yamaha ignores the plain instructions of the Supreme Court, which direct courts to analyze cases in general terms and not on the basis of what specifically happened. See, e.g., Sisson, 497 U.S. at 363 ("The jurisdictional inquiry does not turn on the actual effects on maritime commerce of the fire on Sisson's vessel; nor does it turn on the particular facts of the incident in this case . . . Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.").

As lower courts have understood even before Grubart, the specific place on a body of water in which events occurred is not relevant so long as it is a navigable body of water and the place in question is in principle navigable. See, e.g., Price v. Price, 929 F.2d 131, 133-34 (4th Cir. 1991) ("Rules governing conduct on navigable waters cannot remain uniform or have any certainty if their applicability is dependent on whether, on any given day, commercial maritime activity is being conducted on the waters."); see also Mission Bay Jet Sports, LLC v. Colombo, 570 F.3d 1124,

7

1127 (9th Cir. 2009) ("Although commercial vessels and personal watercraft are supposed to operate in different areas of Mission Bay, it is a rule that keeps personal watercraft from venturing beyond the cul-de-sac to the ocean, or vice-versa for other vessels. The reserved area itself is . . . neither enclosed nor obstructed; the rest of Mission Bay, as well as the Pacific Ocean, are accessible for trade or travel."). Remarkably, Yamaha cites Mission Bay in support of its argument. But Mission Bay clearly affirms the proposition that an event should be analyzed with a view to the potential of that _kind_ of event to disrupt maritime commerce, and not the actual event's disruption, or even the actual event's potential to cause disruption.[2]

The other cases that Yamaha cites in support of its position do not undermine these points. For example, Foster v. Peddicord, places substantial emphasis on the fact that "Southern failed to make any factual allegations that the operator of the boat had violated a navigational rule." 826 F.2d 1370, 1375 (4th Cir. 1987). Because Foster predates several of the Supreme Court's most important cases in this area, Yamaha would have to explain

---

[2] So, for example, in Sisson, analysis at the appropriate level of generality did not require determining whether the specific accident could have disrupted maritime commerce, or even whether a similar accident at that marina could have disrupted maritime commerce; rather, the Supreme Court framed the incident as: "the storage and maintenance of a vessel at a marina on navigable water." Sisson v. Ruby, 497 U.S. at 365.

8

why its holding should be treated as controlling to the extent that it is contrary to the Supreme Court's clear statements in Sisson, 497 U.S. at 366-67 ("In Foremost we identified navigation as an example, rather than as the sole instance of conduct that is substantially related to traditional maritime activity . . . had we intended to suggest that navigation is the only activity that is sufficient to confer jurisdiction, we could have stated the jurisdictional test much more clearly and economically . . . .").

Likewise, River Riders, Inc. v. Steptoe, 672 S.E.2d 376 (W. Va. 2008), a state court case, concerns a whitewater rafting accident. Steptoe emphasized that "there is no existing federal or state precedent applying admiralty jurisdiction to the activity of whitewater rafting." 672 S.E.2d at 388. This case, by contrast, concerns an accident on navigable waters involving a Yamaha personal watercraft, and there is Supreme Court precedent affirming admiralty jurisdiction for an accident on navigable waters involving a Yamaha personal watercraft. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199 (1996).

It follows that the fact that Varner's accident happened near the bank of the Rappahannock, and not in the commercial lanes in the middle of the river, does not weigh against a finding that the first of the two connection requirements is satisfied. See Mission Bay, 570 F.3d at 1129 ("Although . . . this particular incident did not actually disrupt commercial activity, the disruption prong

9

does not turn on what happened in this particular case but on whether the general features of the incident have a <u>potentially</u> <u>disruptive effect</u>.").

As to the second part of the connection requirement, Yamaha places great emphasis on the fact that the activity in which Varner was engaged was not a traditional maritime activity such as navigation. For example, Yamaha's initial brief goes on for several pages about the reason for Varner's falling off the WaveRunner. According to Varner's associates' testimony, she simply fell off and pulled off the person riding in front of her as well. On Varner's testimony, she fell off after the WaveRunner accelerated aggressively and without warning. ECF No. 39 at 8-9. Yamaha consolidates these points into its proposed general characterization of the events: "wave jumping or horsing around," ECF No. 39 at 13, or "three girls drinking, horsing around," <u>id.</u> at 22. Elsewhere in its brief, Yamaha stresses that "[t]here are no allegations . . . related to matters such as navigational error, piloting, or shipping." ECF No. 39 at 13.

But this is not a tort action against Varner's associates. Yamaha's focus on the ways in which Varner's injury may have been partially caused by what she and the others were doing misses the point. And Varner's response brief similarly becomes mired in arguing the motion on Yamaha's terms (whether the three people involved in the accident were "horsing around" or doing something

10

else). That, however, is not relevant to whether Yamaha can be sued in tort, in admiralty jurisdiction, for its allegedly faulty design of the WaveRunner and alleged failure properly to warn users. To the extent that such facts are of any relevance, they go to the merits of the underlying case, not to the jurisdictional question at issue here. Yamaha's briefing casts no doubt on the question of whether a personal watercraft is a vessel within the meaning of 1 U.S.C. § 3 ("all means of water transportation"), nor on the satisfaction of the location prong. Yamaha's argument rests entirely on the claim that the events did not meet the connection requirement and fails properly to address how the connection requirement applies to this case. Instead, Yamaha cites several district court opinions denying admiralty jurisdiction on facts that do not parallel a crucial aspect of this case: that it is a products liability action brought against a commercial entity for the design of a vessel, and not a tort action brought against another person for some action committed on or near a body of water.

Yamaha points to no case involving similar facts in which a court found there to be no admiralty jurisdiction. In fact, Yamaha cites only a single case that deals with admiralty jurisdiction for products liability cases, Mullinex v. John Crane, Inc., 4:18-cv-33, 2020 WL 2025538 (E.D. Va. April 27, 2020), and that case affirmed admiralty jurisdiction. Yamaha instead focuses on

11

arguing that the nature of the event--"wave jumping or horsing around," in Yamaha's formulation--fails the second prong of the Grubart test.

But that is not the right level of generality at which to construe the events. An appropriate description fixes on the activity as it pertains to the nature of the claim being brought. In this case, an appropriate description might be "a passenger injury caused by a vessel's propulsion system after the passenger fell from the vessel in navigable waters." So construed, this case clearly falls within federal admiralty jurisdiction. It is immediately clear from framing at that intermediate level of generality that: (1) the event is of a type that could disrupt maritime commerce; (2) the event is related to traditional maritime activities; and (3) as in Foremost, this case concerns rules--the design of a vessel and its safety warnings--that implicate both commercial and non-commercial maritime activities, and concerning which there is a federal interest in consistency. See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 542-43 (1995) (affirming a broad understanding of the second facet, under which "ordinarily" any tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction). Accordingly, the requirements for federal admiralty jurisdiction are satisfied in this case.

## CONCLUSION

For the reasons set forth above, DEFENDANT YAMAHA MOTOR CORPORATION, U.S.A.'S MOTION FOR DETERMINATION REGARDING ADMIRALTY JURISDICTION (ECF No. 38) will be denied.

It is so ORDERED.

                                              /s/ REP

                                    Robert E. Payne

                                    Senior United States District Judge

Richmond, Virginia
Date: October 27, 2021